UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
G.E.,

              Plaintiff,

        - against -

THE CITY OF NEW YORK and THE NEW YORK
POLICE DEPARTMENT,

              Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
12-CV-5967 (RRM) (SLT)

ROSLYNN R. MAUSKOPF, United States District Judge.

        Plaintiff G.E. brings this action against defendant the City of New York (the "City"), alleging deprivation of her federal civil rights under 42 U.S.C. § 1983, as well as the following claims under state law: false arrest; false imprisonment; assault; battery; religious discrimination in violation of the New York State Constitution; intentional infliction of emotional distress; negligent infliction of emotional distress; state law prima facie tort; negligent hiring and retention; and negligent training and supervision. (*See generally* Compl. (Doc. No. 1).)[1] The City now moves for summary judgment on all claims, (*see* Defs.' Mot. (Doc. No. 36)), and G.E. opposes the motion (*see* Pl.'s Opp. (Doc. No. 38)). Also before the Court is G.E's motion to amend (*see* Mot. Am. (Doc. No. 46)), which the City opposes (*see* Defs.' Opp. (Doc. No. 47)).

---

[1] As reflected in the caption, G.E. purports to bring this action not only against the City but also against the New York Police Department (the "NYPD"). However, the NYPD is a non-suable agency of the City. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (citing N.Y.C. Charter § 396). Accordingly, G.E.'s claims against the NYPD are denied.

In addition, on December 13, 2016, G.E. filed a motion to amend the complaint by adding the arresting officer as a defendant. (*See* Mot. Am. (Doc. No. 46).) She filed that motion over three years after learning the arresting officer's identity, more than six months after the close of discovery, and nearly a month after the instant summary judgment motion was fully briefed. For those reasons – discussed in detail below – G.E.'s motion to amend is denied.

For the reasons set forth below, the City's motion for summary judgment is granted as to all claims with the exception of G.E.'s federal and state claims related to religious discrimination. G.E.'s motion to amend is denied.

**BACKGROUND**

This action arises from events surrounding G.E.'s arrest and detention in March of 2012, following an altercation between G.E. and three other individuals: Raya Tous ("Tous"), Yasmin Ali ("Yasmin"), and Roula Ali ("Ali"). (G.E. 56.1 (Doc. No. 37) at ¶¶ 4–33.) Unless otherwise noted, the following facts are undisputed and taken from the parties' Local Rule 56.1 Statements.

## I.  The Altercation and G.E.'s Arrest

The altercation stemmed from the fact that Tous and Yasmin, who are sisters, had been spreading rumors that G.E.'s sister had behaved inappropriately with a boy. (*Id.* at ¶ 6.) G.E., Tous, and Yasmin are Muslim, and in their community, such accusations could be damaging to the reputation of G.E.'s family. (*Id.* at ¶ 9.) As a result, G.E., Tous, and Yasmin – all of whom were high school students during the relevant period – arranged a meeting to discuss the allegations. (*Id.* at ¶¶ 5–7.) The meeting took place on the street, (*id.* at ¶ 7), where the three girls argued for approximately ten minutes before Ali – who is Tous and Yasmin's mother – arrived on the scene and slapped G.E. across the face. (*Id.* at ¶¶ 11–12.) A physical altercation ensued, involving G.E., Ali, Raya, and Yasmin. (*Id.* at ¶¶ 13–17.) During the scuffle, G.E. swung her arms, scratched Ali, and bit the hand of one of the sisters. (*Id.*)

On March 16, 2012, Ali filed a complaint with the NYPD. (*Id.* at ¶ 18.) On March 18, 2012, Officer Kenneth Diaz interviewed Ali. (*Id.* at ¶ 19.) Ali reported that G.E. had scratched her face, causing a laceration, and that G.E. had attacked at least one of Ali's daughters in the past. (*Id.* at ¶¶ 19–20.)

On March 21, 2012, three days after Diaz interviewed Ali, G.E. was arrested. (*Id.* at ¶ 21). Later that day, Ali and Tous identified G.E. by photograph,[2] and the injuries on Ali's face and arm were photographed.[3] (*Id.* at ¶ 22–24.) On the same day, a paralegal employed at the Kings County District Attorney's Office interviewed Tous and Ali and signed a criminal complaint against G.E. (*Id.* at ¶¶ 25–26.) Tous and Ali both told the paralegal that on March 16, 2012, G.E. threatened to beat up Tous and Yasmin. (*Id.* at ¶¶ 26, 28.) Tous also told the paralegal that G.E. had scratched Ali's face and bitten Tous's hand. (*Id.* at ¶¶ 29–30.)

Sometime thereafter, G.E.'s parents and the parents of the two sisters began communicating with each other. (*Id.* at ¶ 31.) The exact nature of those communications is not clear from the record, but G.E. believed that the parents had come to an agreement settling any issues between the families. (*Id.*) G.E. never filed a complaint against Tous, Yasmin, or Ali. (*Id.* at ¶ 32.) On June 25, 2012, the charges against G.E. were dismissed pursuant to the speedy trial provisions of the New York Criminal Procedure Law. (*Id.* at ¶ 33.)

## II.    Events Following G.E.'s Arrest

After G.E. was arrested, she was transported to the 62nd Precinct (the "Precinct") of the NYPD. (*Id.* at ¶ 34.) At the Precinct, G.E. was told that she would need to remove her hijab for a photo. (*Id.* at ¶ 37.) She requested to take the photo with her hijab on. (*Id.* at ¶ 38.) Her request was denied, but G.E. was taken to a private room so that she could be photographed by a female officer, outside the presence of any males. (*Id.* at ¶¶ 39–42.)

---

[2] G.E. concedes that the photograph depicts her face but "denies that Ali and Tous identified Plaintiff in a confirmatory photograph[,] as [the City] ha[s] not provided any information as to the source of the photograph or the process by which Plaintiff was identified by Ali and Tous." (*Id.* at ¶ 22.)

[3] G.E. "denies this allegation as the photographs have not been identified or authenticated as depicting Roula Ali." (*Id.* at ¶ 23.)

Later, G.E. was transported to Central Booking, where she would be photographed a second time. (*Id.* at ¶ 43.) G.E. asked for a female photographer but was told that no female photographer was available. (*Id.* at ¶¶ 45–46.) G.E. also was told that the camera was fixed, and that the photo therefore could not be taken in another room. (*Id.* at ¶ 47.) She removed her hijab, and a male photographer took her photo at the fixed photography station. (*Id.* at ¶ 48.) G.E. then underwent a pat-down in a different room, which was occupied only by women, and was allowed to re-don her hijab in that room, once the pat-down was complete. (*Id.* at ¶¶ 49–50.)[4]

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific

---

[4] According to the City, G.E. could not tell how much time she spent without her hijab on because she was unable to view a clock during the relevant period. (*Id.* at ¶ 49.) However, G.E. claims that she had to wait approximately fifteen minutes before she was allowed to re-don her hijab. (*Id.*)

4

facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

### I. Federal Constitutional Claims Relating to Religious Discrimination[5]

G.E. claims that the City violated her rights through NYPD policy and custom when she was required to remove her hijab for photographs both at the Precinct and at Central Booking. To prevail in a § 1983 action against a municipality, a plaintiff must adhere to the requirements set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978). Specifically, a plaintiff must prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Polo v. United States*, No. 12-CV-3742 (SJ)

---

[5] In her complaint, G.E. also lists constitutional claims against the City alone under the Fourth, Fifth, Eighth, and Fourteenth Amendments. (Compl. at ¶ 43.) However, she cannot and does not cite any facts in the record to demonstrate a policy or custom that even plausibly could violate the rights conferred by those amendments. Accordingly, the City's motion for summary judgment is granted on any claims G.E. purports to bring pursuant to § 1983 and *Monell* under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

(PK), 2016 WL 4132250, at *3 (E.D.N.Y. Aug. 3, 2016) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)).

G.E. alleges violations of various constitutional rights. First, she contends that the removal of her hijab both at the Precinct and at Central Booking gives rise to a First Amendment retaliation claim. The Court finds that it does not. In addition, G.E. asserts that the NYPD's policy or custom of requiring arrestees to remove their head covering unlawfully burdens her religious practice in violation of the Free Exercise Clause. Related is G.E.'s narrower Free Exercise claim that the policy, as employed at Central Booking, failed to provide reasonable accommodation to her religious beliefs that prohibited her from removing her head covering in public or in the presence of men. The Court finds that on the record before the Court, summary judgment is not warranted. Each of these claims is addressed in turn.

  a. **First Amendment Retaliation Claim**

To prevail on a claim of retaliation under the First Amendment, a plaintiff must show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Putting aside whether the NYPD's requirement that G.E. remove her hijab in the presence of men constituted adverse action, the record contains no evidence at all of a causal connection between G.E.'s religious practice and the application of the custom and policy related to the removal of an arrestee's head covering during the post-arrest booking processes. (*See* Pl.'s Opp at 7–8.); *Hooker v. Fournier*, 29 Fed. App'x 641, 642 (2d Cir. 2002) (summary order) (finding that a "retaliation claim is without merit because [plaintiff] failed to demonstrate a causal connection between his Muslim religious activity, which is protected, and the adverse

6

confinement suffered at the hands of the defendants.") To the contrary, G.E. challenges an ostensible policy applicable to *all* arrestees wearing *any* kind of head covering. She does not point to any facts in the record to suggest that the removal of G.E.'s hijab was in any way motivated by religious considerations. Accordingly, the City's motion for summary judgment as to G.E.'s retaliation claim is granted.

### b. Free Exercise Claims

G.E. asserts that her right to freely exercise her religion was violated in two ways: first, when she was required to remove her hijab for the photograph taken at the Precinct, even though she was allowed to do so in a private room, with only a female photographer present, and second, when she was required to remove her hijab at Central Booking in the presence of men despite a request to do so in a private area where no men were present.

"It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy, or statute that burdens a religious practice, provided the burden is not the object of the law but merely the 'incidental effect' of an otherwise valid neutral provision" *Seabrook v. City of N.Y.* 2000 U.S. App. LEXIS 6218 (2d. Cir, April 4, 2000) (quoting *Employment Division v. Smith,* 494 U.S. 872, 878-79 (1990). A law or policy, in turn, is neutral unless it is "specifically directed at [a] religious practice." *Smith,* 494 U.S. at 878. Here, as noted above, the parties do not dispute that policy G.E. challenges is a neutral one of general applicability, as head coverings must be removed regardless of an arrestees religious beliefs.[6]

As such, "where the government seeks to enforce a law that is neutral and of general applicability, . . . it need only demonstrate a rational basis for its enforcement, even if

---

[6] G.E. does not allege, nor does the record support, that "the object of [the challenged policy] is to infringe upon or restrict practices because of their religious motivation," or that its "purpose . . . is the suppression of religion or religious conduct." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993); *see also, e.g., Bronx Household of Faith v. Cmty. Sch. Dist. No. 10*, 127 F.3d 207, 216 (2d Cir.1997).

7

enforcement of the law incidentally burdens religious practices." *Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570, 574 (2d Cir. 2002). Courts have applied the following useful framework to the rational basis test, both in the prison context and post-arrest circumstances such as here:

> Courts must evaluate four factors in making [this] determination: [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (citing *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)); *see also Soliman v. City of New York*, No. 15-CV-5310 (PKC) (RER), 2017 WL 1229730, at *7 (E.D.N.Y. Mar. 31, 2017) (employing the *Turner* factors in assessing the NYPD's policy requiring removal of head covering for booking photos).

On this motion, the parties have failed to analyze the rational basis test in any meaningful way, either on the law or on the facts. The litigants set forth a threadbare recitation of this critical constitutional standard, and provide the Court with no guidance as to the factors that the Court should consider in applying it. Equally troubling here, in their Rule 56.1 statements, the litigants have submitted reams of material for the Court to consider, ostensibly to demonstrate that the actions of the NYPD with regard to the removal of head covering for post-arrest photographs either do or do not meet each prong of the rational basis test. (*See generally* G.E. 56.1; City 56.1 (Doc. No. 35). Those materials include, among other things, lengthy deposition and affidavit testimony of Rule 30(b)(6) witnesses from the NYPD that provide detailed information on the relevant policies and practices both at the precincts and at Central Booking, written guidance governing those practices, photos of "basic ear anatomy," and a "white paper"

8

from the Department of Commerce entitled "Personal Identification from Mugshot Ear Images." All told, the parties have submitted over 300 pages of such material. Yet, the parties' briefs in support of their motion contain *not one citation to this record evidence*.

The City claims that summary judgment is warranted by pointing to court decisions in which policies requiring removal of religious head coverings have been found to pass constitutional muster under the Free Exercise Clause. In particular, the City relies heavily on *Zargary v. City of N.Y.*, 607 F. Supp. 2d 609, 613 (S.D.N.Y. 2009), *aff'd*, 412 F. App'x 339, 341–42 (2d Cir. 2011), which held that the policy of uncovering a prisoner's head for a photograph has a rational connection to a legitimate government objective. While *Zargary* provides a helpful analysis, the Court notes that the district court there arrived at its findings of fact and conclusions of law after a bench trial pursuant to Rule 52 of the Federal Rules of Civil Procedure. And while there may or may not be legitimate governmental interests in taking photographs of the type and in manner at issue here, neither the City nor G.E. explain where in the record the Court can find support for their respective positions.

This factual void raises particular difficulty in addressing G.E.'s accommodation claim. The City provides nothing in the way of record evidence (or for that matter, legal support) to explain why there were no alternative means of accommodating an arrestee's religious beliefs at Central Booking at the time when G.E. was arrested – other than to recite the fact that the Central Booking camera was in a fixed location in view of both male and female detainees and staff. Nor does the City explain any resource, staff or other burdens the City would face were it to consider moving the camera, or providing some other accommodation. Not only are these factors central to the rational basis test itself, they are critical to the analysis here because the

City did, in fact, change its policy to provide for such accommodation subsequent to G.E.'s arrest.[7]

All told, the Court cannot – and will not – resolve these significant constitutional issues on the record before it. This is not to say that that G.E. has a viable Free Exercise Claim. Rather, as the record stands now, the Court is not persuaded that the City is entitled to summary judgment.[8]

## II. State Law Claims

G.E. brings the following state law claims against the City: false arrest, (*id.* at ¶¶ 52–56); false imprisonment, (*id.* at ¶¶ 57–61); assault, (*id.* at ¶¶ 62–64); battery, (*id.* at ¶¶ 65–68); intentional infliction of emotional distress, (*id.* at ¶¶72–77); negligent infliction of emotional distress, (*id.* at ¶¶ 78–83); state law prima facie tort, (*id.* at ¶¶ 84–88); negligent hiring and retention, (*id.* at ¶¶ 89–92); and negligent training and supervision, (*id.* at ¶¶ 93–96). For the reasons set forth below, the City's motion for summary judgment as to those claims is granted.

### a. False Arrest and False Imprisonment

The "common law tort of false arrest is a species of false imprisonment," as both claims have identical elements. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). A plaintiff claiming false arrest or false imprisonment under New York law must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

---

[7] Interim Order 29, issued March 2, 2015, provides for arrestees who request to have their photo taken without their religious head covering to be transported to the Mass Arrest Processing Center at police headquarters where the photo will be taken in a private area. (*See* Pl. 56.1, Ex. D.)

[8] G.E. has also asserted religious discrimination claims under the New York Constitution. (Compl. ¶¶ 69-71.) The Court will hold in abeyance addressing those claims until a resolution of G.E.'s Free Exercise Clause claims. As the *Soliman* court cautioned, given the novel and complex issues of state law raised by these claims, the Court may ultimately decline to exercise supplemental jurisdiction. *Soliman*, at 27, n. 10.

privileged." *Id.* (quoting *Broughton v. State*, 335 N.E.2d 310, 314, (N.Y. 1975)); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). It is well-settled that the existence of probable cause is justification for an arrest within the meaning of the fourth element, and will be "a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Similarly, "a finding of probable cause will defeat a state tort claim for false imprisonment." *Zanghi v. Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985).

Probable cause, in turn, exists where an arresting officer is "in possession of facts sufficient to warrant a prudent person to believe that the suspect ha[s] committed . . . an offense." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). The validity of an arrest does not depend upon the ultimate finding of guilt or innocence. *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 419 (S.D.N.Y. 2002) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). Thus, G.E.'s false arrest and false imprisonment claims can survive only if the facts available to the NYPD failed to establish probable cause sufficient to warrant the belief that G.E. had committed a crime. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Unless there are "'circumstances that raise doubt as to the victim's veracity,' a victim's report of a crime is generally enough, by itself, to establish probable cause." *Koester v. Lanfranchi,* 288 F. App'x 764, 766 (2d Cir. 2008) (quoting *Singer*, 63 F.3d at 119). "[W]hen a 'victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator.'" *Brodie v. Fuhrman*, No. 07-CV-4212 (DGT), 2010 WL 1189347, *6 (E.D.N.Y. Mar. 29, 2010) (quoting *Bullard v. City of New York,* 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003)). Circumstances that might corroborate a putative victim's veracity include: "(1) the

officer's observation of the putative victim's physical injuries, (2) the level of detail and consistency in the putative victim's description of events, [or] (3) the putative victim's identification of the plaintiff by name and physical description.'" *Id.* (quoting *Williams v. Schultz*, 9:06-CV-1104 (DNH), 2008 WL 4635383, at *9 (N.D.N.Y. Oct. 16, 2008)).

In this case, Ali filed a complaint and gave an interview to the NYPD before G.E. was arrested. The complaint, filed on March 16, 2012, specifically alleges that G.E. scratched Ali's face. (Complaint Form (Doc. No. 35-3) at 1.) Two days later, in her interview, Ali made the same allegation, adding that G.E. had assaulted one of her daughters in the past. (Interview Form (Doc. No. 35-5) at 1.)

G.E. takes the position that the police lacked probable cause to arrest her despite Ali's accusations. She alleges that, before she was arrested, the arresting officers spoke with unnamed officials at her high school about the altercation at issue. (Pl.'s Opp. at 27.) She further alleges that the school officials told the police that G.E. had acted out of self-defense and provided a "good character reference" for her. (*Id.*) However, the record contains no evidence at all – e.g., testimony from the school officials who allegedly spoke with the police, let alone their identities – to support G.E.'s position.

Moreover, even if such evidence were in the record, it would not, on its own, vitiate probable cause, as an officer is not required to eliminate plausible claims of innocence before making an arrest. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."); *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally

determine guilt through a weighing of the evidence."); *Rodriguez v. New York City Transit Auth.*, No. 06-CV-13762 (RJS), 2009 WL 3817298, at *7 (S.D.N.Y. Nov. 10, 2009) ("[W]e have found probable cause where a police officer was presented with different stories . . ."); *Russel v. Eighty Fourth Precinct*, No. 03-CV-6179 (JBW), 2004 WL 2504646, at *3 (E.D.N.Y. Nov.8, 2004) ("An arresting officer is not a judge and cannot be expected to hold a trial . . . to determine credibility of witnesses."). Absent any evidence that the police had reason to doubt Ali's accusations, G.E.'s claim that the NYPD lacked probable cause to arrest her is hollow. Therefore, the City's motion for summary judgment as to G.E.'s false arrest and false imprisonment claims is granted.

### b. Assault and Battery

Under New York law, "where an arrest is supported by probable cause, an officer will not be liable under theories of assault and battery for the use of physical force when and to the extent she or he reasonably believes it is necessary to effect the arrest." *Ladoucier v. City of N.Y.*, 10-CV-05089 (RJH), 2011 WL 2206735, at *6 (S.D.N.Y. June 6, 2011) (quotation and internal alterations omitted). Here, given that probable cause existed to arrest G.E., her claims of assault and battery cannot be sustained unless she can show that the arresting officer used a degree or type of force to effect her arrest that he believed to be unreasonable at the time. However, G.E. cites no facts – and the record contains none – that could be construed as evidence that the arresting officer used a degree of force that was unreasonable by any measure. In fact, G.E. herself testified that her arresting officer drove her from her school to the Precinct without restraining her in any way, and that he applied handcuffs only immediately before entering the Precinct. (G.E. Depo. (Doc. No. 35-4) at 16.) Thus, given the circumstances of G.E.'s arrest, the City's motion for summary judgment as to G.E.'s assault and battery claims is granted.

13

### c. Intentional and Negligent Infliction of Emotional Distress

G.E.'s intentional infliction of emotional distress claim fails as a matter of law, because it is "'well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity.'" *Rivera v. City of New York*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005) (quoting *Lauer v. City of New York*, 240 A.D.2d 543, 659 N.Y.S.2d 57, 58 (App. Div. 1997)). As the only named defendants in this action are government entities, G.E. cannot state a claim for intentional infliction of emotional distress.

Moreover, even assuming G.E. had named an individual municipal actor instead of a government entity, her claim still would fail, as New York law "requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (internal quotations omitted).

The record contains no evidence – even accepting at face value G.E.'s allegations that the photographer in Central Booking "was very rude and nasty to Plaintiff because she requested accommodations and he did not want to consider them," (G.E. 56.1 at ¶ 46) – that anyone associated with the City acted in a manner that meets the stringent requirements set forth above. Put another way, there is no evidence of the kind of reckless or intentional conduct that is "utterly intolerable in a civilized society." *Stuto*, 164 F.3d at 827 (internal quotations omitted).

Thus, the City's motion for summary judgment as to G.E.'s claim of intentional infliction of emotional distress is granted.

For similar reasons, the City's motion for summary judgment as to G.E.'s claim of negligent infliction of emotional distress is granted. *See Dorn v. Maffei*, 386 F. Supp. 2d 479, 486 (S.D.N.Y. 2005) ("[T]o state a claim for negligent infliction of emotional distress, plaintiffs must allege conduct that 'was so outrageous and extreme as to support a claim for emotional distress,' which is the same standard used in intentional infliction of emotional distress cases.") (quoting *Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 279 (1st Dep't 2001)).

### d. State Law Prima Facie Tort

To prevail on a claim of prima facie tort, a plaintiff must prove: "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." *Berland v. Chi*, 38 N.Y.S.3d 57, 59 (App. Div. 2016). However, a prima facie tort claim is not an available remedy when the complaint states colorable allegations for other, more traditional tort claims. *Silver v. Kuehbeck*, No. 05-CV-35 (RPP), 2005 WL 2990642, at *14 (S.D.N.Y. Nov. 7, 2005) ("[Plaintiff's] prima facie tort claim must be dismissed because it alleges no facts not included in his other claims for relief, and it completely overlaps [with] the other claims alleged in the Complaint. To the extent that allegations provide grounds for other causes of action included in the Complaint, those allegations cannot give rise to a prima facie tort claim."). Moreover, allegations that generally "amount[] to a claim of emotional distress[] [a]re insufficient to allege special damages." *Berland*, 38 N.Y.S.3d at 59.

In her complaint, G.E. sets forth exactly the same allegations to support the prima facie tort claim and the other tort claims. (*Compare, e.g.*, Compl. at ¶¶ 62–64 (setting forth allegations

15

of assault); *with id.* at ¶¶ 84–88 (setting forth allegations of prima facie tort).) Moreover, in her brief opposing summary judgment, G.E.'s arguments for prima facie tort are entirely coextensive with her emotional distress arguments. (*See* Pl.'s Opp. at 16–17.) Accordingly, the City's motion for summary judgment as to G.E.'s claim of prima facie tort is granted.

### e. Negligent Hiring, Training, Retention, and Supervision

G.E. asserts claims against the City, acting through the NYPD, for negligent hiring, retention, training, and supervision. To prevail in any such claim, a plaintiff must prove, in addition to the elements of standard negligence, that "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted).

Here, the record does not contain any specific facts concerning the hiring, training, retention, or supervision of any named individual who allegedly engaged in misconduct with respect to G.E. – let alone any facts showing that the NYPD "knew or should have known of [its personnel's] propensity for the conduct" allegedly at issue, as would be required to prevail on this claim. *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791, 793 (App. Div. 1997); *see also Batista v. City of New York*, No. 05-CV-8444 (KMK), 2007 WL 2822211, at *9 (S.D.N.Y. Sept. 25, 2007) (granting summary judgment where, "because [defendant] has failed to name any individual defendant employed by the City of New York, it is impossible to maintain that the City of New York was aware of any employee's propensity for the alleged

tortious conduct"). Accordingly, the City's motion for summary judgment as to G.E.'s claims of negligent hiring, training, retention, and supervision is granted.

### III. Motion to Amend

On December 13, 2016, G.E. filed a motion to amend the complaint by adding the arresting officer as a defendant. (*See* Mot. Am. (Doc. No. 46).) For the reasons set forth below, G.E.'s motion to amend is denied.

#### a. Procedural History

G.E. commenced this action on December 4, 2012. (*See* Compl.) On April 16, 2013, the parties appeared for an initial conference before the Honorable Magistrate Judge Robert M. Levy. (*See* 4/16/13 Minute Entry.) At that conference, defendants served on G.E. their Rule 26(a) disclosures, which, *inter alia*, identified Diaz as the arresting officer. (*See* Opp. Mot. Am. at 1.) Following the close of discovery in May of 2016, (*see* 4/26/16 Order), the parties filed the instant, fully briefed motion for summary judgment on November 21, 2016. (*See* Mot. Summ. J. (Doc. No. 36); Opp. Summ. J. (Doc. No. 38).) G.E.'s brief opposing summary judgment made no mention of amending the complaint to add Diaz as a defendant. (*See generally* Opp. Summ. J.) Nevertheless, G.E. filed her motion to amend on December 13, 2016 – over three years after learning of Diaz's identity as the arresting officer, more than six months after the close of discovery, and nearly a month after the summary judgment motion was fully briefed. (*See* Mot. Am.)

#### b. Discussion

A decision to grant or deny a motion to amend is within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). To obtain leave to amend, a party must show good cause. Fed. R. Civ. P. 16(b); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d

17

Cir. 2000). In turn, "considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories*, 742 F.2d 54, 58 (2d Cir. 1984); *see also Foman*, 371 U.S. at 182.

The Court's scheduling order implicitly requires pleadings to be amended before the discovery deadline has passed. *See Dowcroft Corp. v. Smith*, No. 01-CV-0816E (SR), 2004 WL 626801, at *1 n.5 (W.D.N.Y. Feb. 17, 2004) (noting that although the court's scheduling order did not include a deadline for amended pleadings, the order nonetheless "implicitly required pleadings to be amended *before* the deadline for summary judgment") (emphasis in original). Even in the absence of an order establishing a deadline to amend the pleadings, "the Court expects parties to act diligently in the pursuit of their rights in order to allow the Court to manage its caseload effectively." *Davidowitz v. Partridge*, No. 08-CV-6962 (NRB), 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010). To decide otherwise would require courts "to enter scheduling orders in every case just to prevent motions that are clearly untimely." *Id.*

G.E. seeks to amend the complaint for the first time in this nearly five-year-old litigation – after the close of discovery, and subsequent to the filing of a fully-briefed motion for summary judgment. She does not claim that she was unable to discover the identity of the arresting officer until this late stage. (*See generally* Mot. Am.) In fact, G.E. knew that Diaz was the arresting officer at least as early as the date of the first initial conference in this case, when the defendants identified Diaz as the arresting officer in their Rule 26(a) disclosures, more than three-and-a-half years before G.E. filed her motion to amend. (Opp. Mot. Am. at 1.) Even if G.E. had not discovered early on that Diaz was the arresting officer, she had ample opportunity – during the

18

three years that passed between the commencement of this action and the close of discovery – to inquire as to the arresting officer's identity.

G.E. offers no explanation for the delay other than the following, vague statement: "The delay in amending the complaint is that for several years the parties devoted a substantial amount of time to settling the matter and document discovery progressed slowly and with some difficulty especially in agreeing to witnesses that satisfied Rule 30(b)(6) notice." (Mot. Am. at 2.) This explanation is unsatisfactory. The fact that the parties devoted resources to settlement negotiations does not absolve G.E. of her obligation to diligently pursue the identity of a party she may want to sue, and the fact that discovery took place over a long period of time merely gave G.E. more opportunity – not less – to move to amend at a more appropriate time.

G.E. relies on *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993), for the proposition that "the rule in this Circuit has been to allow a party to amend its pleading in the absence of a showing of prejudice or bad faith." However, in *Parker*, 204 F.3d at 339, decided seven years after *Block*, the Second Circuit noted that despite the fact that "mere delay" typically provides an insufficient basis on which to deny a motion to amend, it made clear that it had "not yet had occasion . . . to balance that principle with Rule 16(b)'s requirement [that a plaintiff demonstrate good cause]." In balancing these principles, the Second Circuit qualified its earlier statement in *Block* and indicated that Rule 16 was enacted to provide "a measure of certainty in pretrial proceedings," and that delay could be sufficient to warrant a party's demonstration of good cause before amending a pleading. *See id.* at 339–40.

In this case, given that G.E. knew of Diaz's identity as the arresting officer at least as of the initial conference – and had more than three years before the close of discovery during which to inquire as to the arresting officer's identity – her motion to amend the complaint is denied.

*See, e.g.*, *Davidowitz*, 2010 WL 1779279, at *4 (denying motion to amend made a month following the close of discovery); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (application to amend complaint made two-and-a-half years after commencement of action constituted undue delay and justified denial of leave to amend); *John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (delay of four months after deadline for amendments justified denial); *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 300–04 (S.D.N.Y. 1996) (denying motion to amend because plaintiff waited until ten months after deadline for amendments to file motion).[9]

## CONCLUSION

For the reasons set forth herein, the City's motion for summary judgment, (Doc. No. 33), is granted as to all claims with the exception of her federal and state claims related to religious discrimination. G.E.'s motion to amend, (Doc. No. 46), is denied.

SO ORDERED.

Dated: Brooklyn, New York
       September 29, 2017

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[9] The relation back doctrine requires the same outcome. The statute of limitations on § 1983 and New York tort claims is three years. *See Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); N.Y. CPLR § 214(5). G.E. filed her motion to add Diaz as a defendant almost five years after his allegedly unlawful conduct took place, and she does not even claim that the delay was the result of mistake or failure to identify Diaz as a relevant party – as required under the relation back doctrines of federal and New York state law. *See Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) (noting that, among the requirements for relation back under federal law is a showing that, "but for a mistake of identity, the original action would have been brought against" the newly named party) (internal citation and quotation marks omitted); *Vasconcellos v. City of New York*, No. 12-CV-8445 (CM), at *16–17 (S.D.N.Y. Oct. 2, 2014) ("New York courts have held . . . that a plaintiff may not add a new defendant . . . unless the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.") (emphasis in original) (quoting *Malamet v. Vasap Const. Corp.*, 728 N.Y.S.2d 381, 381 (App. Div. 2001)).